UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAMZA SHARIF, CDCR #AD-9470,<br><br>        Plaintiff,<br><br>vs.<br><br>Dr. G. CASIAN, MD,<br><br>        Defendant. | Case No.: 3:18-cv-00065-LAB-BLM<br><br>**ORDER:**<br><br>**1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS [ECF No. 2]**<br><br>**2) DENYING MOTION FOR CLERK TO ISSUE SUMMONS [ECF No. 5]**<br><br>**AND**<br><br>**3) DISMISSING COMPLAINT FOR FAILING TO STATE A CLAIM PURSUANT TO 28 U.S.C. § 1915(e)(2) AND § 1915A(b)** |

HAMZA SHARIF ("Plaintiff"), proceeding pro se, is currently incarcerated at California Men's Colony ("CMC") in San Luis Obispo, California, and has filed a civil rights Complaint pursuant to 42 U.S.C. § 1983 (ECF No. 1).

Plaintiff claims Defendant Casian, a doctor at Richard J. Donovan Correctional Facility ("RJD"), violated his Eighth Amendment rights by failing to "effectively" treat a

recurring skin rash, diagnosed as tinea versicolor, while he was incarcerated there from 2012 through 2014. *See* Compl., ECF No. 1 at 1-3. He seeks injunctive relief preventing "discrimination in dealing with [his] medical needs," as well as $125,000 in general and punitive damages. *Id.* at 7.[1]

Plaintiff did not prepay the civil filing fee required by 28 U.S.C. § 1914(a) at the time of filing, but instead has filed a Motion to Proceed In Forma Pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a) (ECF No. 2), together with a Motion requesting that the Clerk of Court issue a summons for his use in order to effect service upon Dr. Casian pursuant to Fed. R. Civ. P. 4 (ECF No. 5).

///

---

[1] The Court notes that Plaintiff captions his pleading as an "Amended Complaint," and includes S.D. Cal. Civil Case No. 14cv2816-DMS-WVG on its title page. *See* Compl., ECF No. 1 at 1. Plaintiff's previously-filed case, however, was dismissed without prejudice pursuant to FED. R. CIV. P. 41(a)(2) on July 27, 2016, after Plaintiff filed a Motion seeking to "withdraw" it. *See Sharif v. Casian,* S.D. Civil Case No. 14-cv-2816-DMS-WVG (July 27, 2016 Order Dismissing Case) (ECF No. 68). While it appears Plaintiff later attempted to file an objection to the magistrate judge's decision to vacate a mandatory settlement conference in light of Plaintiff's then-pending Motion to Withdraw, *see id.* ECF Nos. 66, 70, Plaintiff never sought leave to vacate or set aside the judgment in S.D. Civil Case No. 14-cv-2816-DMS-WVG in order to re-open that case with an amended pleading. Rather, a year and a half later, he has instead elected to prosecute a new civil action, together with a new and separate Motion to Proceed IFP. "The very purpose of Rule 41(a)(2) is to allow a district court, in its discretion, to dismiss a civil action without prejudice even after responsive pleadings have been filed by the defendants," and to "allow[] the court to attach conditions to the dismissal, … to prevent prejudice to the defendant." *Hamilton v. Firestone Tire & Rubber Co., Inc.,* 679 F.2d 143, 146 (9th Cir. 1982). Therefore, while Judge Sabraw's July 27, 2016 Order and Judgment imposed no conditions on Plaintiff's Rule 41(a)(2) dismissal, his continued status as a prisoner at the time *this* new case was filed nevertheless "require[s] [him] to pay the full amount of a [new] filing fee." 28 U.S.C. § 1915(a)(b)(1); *Bruce v. Samuels*, __ U.S. __, 136 S. Ct. 627, 632 (2016) ("Just as § 1915(b)(1) calls for assessment of '*an* initial partial filing fee' each time a prisoner 'brings *a* civil action or files *an* appeal' (emphasis added), so its allied provision, § 1915(b)(2), triggered immediately after, calls for 'monthly payments of 20 percent of the preceding month's income' simultaneously for each action pursued.").

## I. IFP Motion

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $400.[2] *See* 28 U.S.C. § 1914(a). The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999). However, a prisoner who is granted leave to proceed IFP remains obligated to pay the entire fee in "increments" or "installments," *Bruce,* 136 S. Ct. at 629; *Williams v. Paramo*, 775 F.3d 1182, 1185 (9th Cir. 2015), and regardless of whether his action is ultimately dismissed. *See* 28 U.S.C. § 1915(b)(1) & (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Section 1915(a)(2) requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for ... the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. § 1915(b)(1); 28 U.S.C. § 1915(b)(4). The institution having custody of the prisoner then collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which his account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2); *Bruce*, 136 S. Ct. at 629.

---

[2] In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $50. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. June 1, 2016). The additional $50 administrative fee does not apply to persons granted leave to proceed IFP. *Id.*

In support of his IFP Motion, Plaintiff has submitted certified copies of his CDCR Inmate Statement Report showing his trust account activity at the time of filing, as well as a Prison Certificate signed by a CMC Accounting Officer attesting as to his monthly balances and deposits. *See* ECF No. 2 at 4, 6-9; 28 U.S.C. § 1915(a)(2); S.D. CAL. CIVLR 3.2; *Andrews*, 398 F.3d at 1119. These statements show Plaintiff owes $4,953.70 in restitution fines, and almost $400 in other obligations, including the full $350 filing fee assessed by Judge Sabraw in S.D. Cal. Civil Case No. 3:14-cv-2816-DMS. *See* ECF No. 2 at 6, 8. However, he has had no monthly deposits to his account, carried no balance over the six month period preceding the filing of his current Complaint, and had an available balance of zero at CMC as of January 3, 2018. *See id.*; 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."); *Bruce*, 136 S. Ct. at 630; *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay ... due to the lack of funds available to him when payment is ordered.").

Therefore, the Court grants Plaintiff's Motion to Proceed IFP (ECF No. 2), declines to exact any initial filing fee because his trust account statement shows he "has no means to pay it," *Bruce*, 136 S. Ct. at 629, and directs the Secretary of the CDCR to collect the entire $350 balance of the filing fees required by 28 U.S.C. § 1914 and forward them to the Clerk of the Court pursuant to the installment payment provisions set forth in 28 U.S.C. § 1915(b)(1). *See id.*

**II.     Initial Screening per 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)**

    A.     <u>Standard of Review</u>

Plaintiff has also filed a Motion requesting that the Clerk issue a summons upon Dr. Casian in order to effect service upon her. *See* ECF No. 5. However, notwithstanding Plaintiff's IFP status or the payment of any partial filing fees, the PLRA also obligates the Court to review complaints filed by all persons proceeding IFP and by those, like

4

Plaintiff, who are "incarcerated or detained in any facility [and] accused of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms or conditions of parole, probation, pretrial release, or diversionary program," "as soon as practicable after docketing," and ideally before the service of process upon any Defendant. *See* 28 U.S.C. §§ 1915(e)(2) and 1915A(b). Under these statutes, the Court must sua sponte dismiss complaints, or any portions thereof, which are frivolous, malicious, fail to state a claim, or which seek damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (§ 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of § 1915[] is to 'ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 907 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 681 (7th Cir. 2012)).

All complaints must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" falls short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

"When there are well-pleaded factual allegations, a court should assume their veracity, and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679; *see also Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000) ("[W]hen determining whether a complaint states a claim, a court must accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff."); *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) (noting that § 1915(e)(2) "parallels the language of Federal Rule of Civil Procedure 12(b)(6)").

"Courts must consider the complaint in its entirety," including "documents incorporated into the complaint by reference" to be part of the pleading when determining whether the plaintiff has stated a claim upon which relief may be granted. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading for all purposes."); *Schneider v. California Dept. of Corrections*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).

However, while the court "ha[s] an obligation where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt," *Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (citing *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)), it may not "supply essential elements of claims that were not initially pled." *Ivey v. Board of Regents of the University of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

B. <u>Plaintiff's Allegations</u>

In his Complaint, Plaintiff claims that "since 2012," he has "suffered from a serious painful and excruciating medical skin rash that is known as tinea ver[s]iscolor,"[3] which he contracted at RJD. *See* Compl., ECF No. 1 at 3. Plaintiff claims the rash "started around [his] chest and shoulders," and Dr. G. Casian "prescribed medicated cream." *Id.*

///

---

[3] "Tinea versicolor is a fungal infection of the skin. It's also called pityriasis versicolor and is caused by a type of yeast that naturally lives on [the] skin. When the yeast grows out of control, the skin disease, which appears as a rash, is the result." *See* https://www.webmd.com/skin-problems-and-treatments/tinea-versicolor-cause-symptoms-treatments#1 (last visited March 8, 2018). Treatment options include over-the-counter topical anti-fungals containing ingredients such as zinc, clotrimazole, miconazole, pyrithione, selenium sulfide, and terbinafine. More serious and recurrent cases may be treated by prescription anti-fungal pills, "which can have side effects," and therefore, require monitoring. *Id.* "Treatment usually eliminates the fungal infection. However, the discoloration of the skin may take up to several months to resolve." *Id.*

After the cream proved ineffective and his rash spread, Plaintiff claims Dr. Casian "would not do anything for [him]," and for two years she "refused [his] every request" for a dermatological specialist consult. *Id.* Plaintiff contends Dr. Casian's "complete refusal to effectively treat [his] skin disease" constitutes deliberate indifference to his serious medical needs, and therefore, violates the Eighth Amendment's proscription of cruel and unusual punishment. *Id.*

### C. 42 U.S.C. § 1983

"Section 1983 creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (internal quotation marks and citations omitted). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

### D. Eighth Amendment Medical Care Claims

There is no question that prison officials act "under color of state law" when housing and providing medical care to prisoners. *See West v. Atkins*, 487 U.S. 42, 49-50 (1988) ("[G]enerally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law.").

Therefore, in order to determine whether Plaintiff has pleaded a plausible claim for relief against Dr. Casian based on her alleged denials of medical care, the Court must review Plaintiff's Complaint and decide whether it contains sufficient "factual content that allows [it] to draw the reasonable inference" that "[the] Government-official defendant, through the official's own individual actions, has violated the Constitution," and thus, may be held "liable for the misconduct alleged." *Iqbal*, 556 U.S. 676, 678.

///

Only "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain ... proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 103, 104 (1976) (citation and internal quotation marks omitted). "A determination of 'deliberate indifference' involves an examination of two elements: (1) the seriousness of the prisoner's medical need and (2) the nature of the defendant's response to that need." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1991), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc) (quoting *Estelle*, 429 U.S. at 104).

"Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992), citing *Estelle*, 429 U.S. at 103-104. "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin*, 914 F.2d at 1059 (quoting *Estelle*, 429 U.S. at 104); *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); *Mendiola-Martinez v. Arpaio*, 836 F.3d 1239, 1248 (9th Cir. 2016). "The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment." *McGuckin*, 914 F.2d at 1059 (citing *Wood v. Housewright*, 900 F.2d 1332, 1337-41 (9th Cir. 1990)).

At the screening stage of these proceedings, the Court will assume that Plaintiff's tinea versicolor, which he describes as a "serious painful and excruciating medical skin rash," is sufficient to show he suffered an objectively serious medical need. *See* ECF No. 1 at 3; *McGuckin*, 914 F.2d at 1059; *Solomon v. Felker*, No. 2: 08-CV-2544 KJN P, 2015 WL 1469165, at *12 (E.D. Cal. Mar. 30, 2015) (citing cases distinguishing between "mere dry-skin condition[s]" which are insufficient to "rise to the level of an objectively serious medical condition," and others, including eczema and involving cracked skin,

sores, bleeding, itching, and elevated blood pressure, which can "constitute[] a serious medical need such that the failure to provide plaintiff with lotion would constitute deliberate indifference.").

However, even assuming Plaintiff's skin rash was sufficiently serious, his pleading fails to include any further "factual content" to show that Dr. Casian acted with "deliberate indifference" to those needs. *McGuckin*, 914 F.2d at 1060; *Jett*, 439 F.3d at 1096; *Iqbal*, 556 U.S. at 678. "Deliberate indifference is a high legal standard." *Hamby v. Hammond*, 821 F.3d 1085, 1092 (9th Cir. 2016) (citing *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004)).

Specifically, while Plaintiff claims Dr. Casian "refused to treat [him] with effective medication," or "allow [him] to see as specialist," *see* ECF No. 1 at 3, the extensive medical records, three inmate health care appeals, and a separate staff complaint attached as exhibits to his Complaint show that Plaintiff was examined and treated at his request on no fewer than *eighteen* separate occasions for his skin condition between August 31, 2012, and February 6, 2015. *See* ECF No. 1 at 9-15, 18-19, 23-42, 63-64. Plaintiff's exhibits show he was examined and diagnosed by Dr. Casian specifically on September 20, 2012, and again on April 2 or 3, 2014, *id.* at 11, 18, 30-31, and that he was referred to K. Dean, a physician and surgeon, on April 18, 2014. Dr. Dean agreed with Dr. Casian's initial diagnosis of tinea versicolor, however, and counseled that Plaintiff's condition was "not dangerous though often difficult to treat." *Id.* at 52. Dr. Dean also prescribed Fluconazole, an oral anti-fungal, but advised Plaintiff that even if effective, it was "likely" his rash would return, and warned that Fluconazole "may cause liver damage." *Id.* Dr. Dean further ordered diagnostics in response to Plaintiff's CDCR Health Care Appeal No. RJD HC 14050855, in order "to rule out various underlying etiologies or similar rash morphology," *id.* at 52, but on April 30, 2014, Plaintiff, who had just completed a two-week course of Fluconazole, and had "active prescriptions for … hydrocortisone 1% cream, ketoconazole 2% cream, and selenium sulfide 2.5% lotion for the [topical] treatment of [his] rash," "refused the tests." *Id.* at 49.

9

To state an Eighth Amendment claim, Plaintiff's Complaint must contain "sufficient factual matter," and not just "labels and conclusions," *Iqbal*, 556 U.S. at 678, to plausibly show Dr. Casian's "purposeful act or failure to respond to [his] pain or possible medical need," *and* the "harm caused by [this] indifference." *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (citing *Jett*, 439 F.3d at 1096). Nothing in Plaintiff's pleading shows either—and "[a] difference of opinion between a physician and the prisoner–or between medical professionals–concerning what medical care is appropriate does not amount to deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 987 (9th Cir. 2012) (citing *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076, 1083 (9th Cir. 2014) (en banc); *Wilhelm*, 680 F.3d at 1122-23. Instead, Plaintiff must plead facts sufficient to "show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendant[] chose this course in conscious disregard of an excessive risk to [his] health." *Snow*, 681 F.3d at 988 (citation and internal quotations omitted); *Hamby*, 821 F.3d at 1092. This he has failed to do.

Accordingly, the Court finds that Plaintiff's Complaint, considered together with the exhibits he has attached, fails to state a plausible Eighth Amendment inadequate medical care claim against Dr. Casian, and that therefore, it is subject to sua sponte dismissal in its entirety pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1). *See Lopez*, 203 F.3d at 1126-27; *Rhodes*, 621 F.3d at 1004.

Because he is proceeding pro se, however, the Court having now provided him with "notice of the deficiencies in his complaint," will also grant Plaintiff an opportunity to amend. *See Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (citing *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992)).

**III. Conclusion and Order**

For the reasons explained, the Court:

1. **GRANTS** Plaintiff's Motion to Proceed IFP pursuant to 28 U.S.C. § 1915(a) (ECF No. 2);

2.     **DIRECTS** the Secretary of the CDCR, or his designee, to collect from Plaintiff's prison trust account the $350 filing fee owed in this case by garnishing monthly payments from his account in an amount equal to twenty percent (20%) of the preceding month's income and forwarding those payments to the Clerk of the Court each time the amount in the account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2). ALL PAYMENTS MUST BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER ASSIGNED TO THIS ACTION;

3.     **DIRECTS** the Clerk of the Court to serve a copy of this Order on Scott Kernan, Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001;

4.     **DENIES** Plaintiff's Motion for Clerk to Issue Summons (ECF No. 5) without prejudice as premature;

5.     **DISMISSES** Plaintiff's Complaint for failing to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b), and **GRANTS** him forty-five (45) days leave from the date of this Order in which to file an Amended Complaint which cures all the deficiencies of pleading noted. Plaintiff's Amended Complaint must be complete by itself without reference to his original pleading. Defendants not named and any claim not re-alleged in his Amended Complaint will be considered waived. *See* S.D. CAL. CIVLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.").[4]

---

[4] Plaintiff is further cautioned that any request for injunctive relief as to Dr. Casian has been rendered moot by his transfer to CMC. *See Andrews v. Cervantes,* 493 F.3d 1047, 1053 n.5 (9th Cir. 2007) (prisoner's claims for injunctive relief generally become moot upon transfer) (citing *Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir. 1991) (per curiam) (holding claims for injunctive relief "relating to [a prison's] policies are moot" when the prisoner has been moved and "he has demonstrated no reasonable expectation of returning

If Plaintiff fails to file an Amended Complaint within the time provided, the Court will enter a final Order dismissing this civil action based both on Plaintiff's failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), and his failure to prosecute in compliance with a court order requiring amendment. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

**IT IS SO ORDERED**.

Dated: March 12, 2018

HON. LARRY ALAN BURNS
United States District Judge

---

to [the prison]")). Moreover, because Plaintiff's claims arose between 2012 and 2014, any claims accruing at RJD outside California's two-year statute of limitations may prove to be time-barred, and could inevitably be subject to dismissal on that basis, unless his Amended Complaint also contains facts sufficient to show that he is entitled to either statutory or equitable tolling. *See Cervantes v. City of San Diego,* 5 F.3d 1273, 1276-77 (9th Cir. 1993) (where the running of the statute of limitations is apparent on the face of a complaint, dismissal for failure to state a claim is proper, so long as Plaintiff is provided an opportunity to amend in order to allege facts which, if proved, might support tolling).